At a Court of *Page 234 
Oyer and Terminer held at this term, John Till, negro, was indicted and tried for the murder, in the first degree, of William H. Till on the 24th day of March, 1867. They were brothers, the deceased being older and much stouter than the prisoner, and were both employed at the time as hands on the farm of James Rogers, Esq., near New Castle. The prisoner had been sent that morning from the farm to the town, and the deceased on his leaving had supplied him with a small sum of money to buy some tobacco for him, but on reaching the town he was drawn to a fire which had just broken out in it, and after assisting to extinguish it returned to the farm later than he was expected, and when asked by the deceased if he had got his tobacco, said he had not, and on his then asking him for the money, he told him with a smile that he had spent it, at which the deceased took offense, and angrily exclaiming "do you take my money in that way and then laugh in my face?" struck him twice with his fist, once on the neck and once on the cheek, when the prisoner also flew into a passion and swore with an oath that he would get the gun for him, and as he turned and started towards the house which was near at hand, the deceased kicked him and defied him to do it, and said to him if he came out there again he would skin him. The prisoner proceeded with a quick step to the house and into the kitchen, and from the kitchen up stairs and soon re-appeared at the kitchen door with the gun in his right hand and without stopping to do it, took it in both hands, cocked it and looked at the cap of it as he walked hurriedly towards the deceased, who then started towards him with a long-handled weeding shovel in his hand with which he had been at work when the altercation began between them; the prisoner then raised the gun in both his hands to his shoulder, pointed it at the deceased and fired and shot him when they were about twelve or fifteen feet from each other. The deceased then rushed at the prisoner, caught him by the collar and again kicked him. The prisoner said nothing as he came towards him from *Page 235 
the kitchen door, but seemed to be very angry. The deceased, however, soon afterwards fell upon the ground, and died in a few hours of the wound inflicted which was with No. 8 bird shot covering a circumference of four or five inches in diameter on the upper portion of the right side of the chest, a number of which had penetrated it to the depth of three inches between the first and second ribs and lacerated the lungs very much. It was also proved that the prisoner had been drinking some that morning after the fire in the town had been extinguished, but was not drunk.
The prisoner, John Till, is indicted for the killing of his brother, William H. Till, on the 24th day of March last in this hundred, with express malice aforethought, and accordingly *Page 239 
for murder of the first degree under the statute. But by the terms of the statute it is also provided that in every case in which murder is otherwise committed than with express malice aforethought, or in perpetrating or attempting to perpetrate a crime punishable with death, it is murder of the second degree under it; and this imports in contradistinction to murder of the first degree as just defined in the words of the statute, when it is committed not with express malice aforethought, but with malice aforethought implied by law. Murder of the first degree is punishable under it with death, murder of the second degree with fine, pillory, whipping and imprisonment for life.
Prior to the enactment of the statute the only law we had in this State defining the crime of murder was the common law, and to that we must recur for the meaning and definition of express and implied malice aforethought, since the statute itself does not give any, and it must therefore be understood to derive them from the common law, and by implication, at least, to adopt them in the same sense in which they were employed and recognized at common law and the law of this State when the statute was enacted.
At common law, and by the law of this State at that time, however, the distinction between express malice aforethought, and malice aforethought implied by law in respect to the crime, had no effect in law to mitigate or change the grade of it, because it was murder nevertheless, and punishable with death, whether committed with express or with implied malice aforethought in the sense in which those terms are employed at common law respectively, although each has its appropriate meaning and signification at the common law. And therefore in accordance with it before the enactment of our present statute some fifteen years ago, we had but one degree of murder under the laws of this State, and that was punishable with death, whether committed with express or implied malice aforethought, as before stated. And at common law they *Page 240 
are thus defined in respect to murder, and to which crime they can alone apply in their proper legal signification. Murder is the killing of any person with malice prepense or aforethought, either express or implied by law. And malice prepense or aforethought constitutes the chief characteristic, the grand criterion by which murder is to be distinguished from all other species of homicide, as well as all other crimes; and it will therefore be necessary to enquire concerning the cases in which such malice has been held to exist. It should, however, be observed that when the law makes use of the term malice aforethought as descriptive of the crime of murder, it is not to be understood merely in the sense of a principle of malevolence to particulars, but as meaning that the fact has been attended with such circumstances as are the ordinary symptoms of a wicked, depraved and malignant spirit; a heart regardless of social duty, and deliberately bent on mischief. And in general any formed design of doing mischief may be called malice; and therefore not such killing only as proceeds from premeditated hatred or revenge against the person killed; but also in many other cases such killing as is accompanied with circumstances which show the heart to be desperately wicked, is adjudged to be of malice prepense, and consequently murder.
So much for malice prepense in general and the peculiar import of the term in the description of murder, and in the distinction of it from all other species of homicide and from all other crimes. But as we have before said, it may be either express or implied by law, and although the distinction between them at common law was not sufficient to induce any discrimination in the grade or degree of the crime or in the punishment due to it, whether committed with express or implied malice, our legislature has seen proper to make the common law distinction between them, slight as it is, the ground of distinction between murder of the first degree and murder of the second degree under the statute, except when it is committed in perpetrating or attempting to perpetrate *Page 241 
any crime punishable with death, which it also makes murder of the first degree. At common law express malice aforethought is when one person kills another with a sedate, deliberate mind and formed design, such formed design being evidenced by external circumstances discovering the intention of the mind; such as lying in wait, antecedent menaces, former grudges, and concerted schemes to do the party some bodily harm. As the intention with which the act is done is in general only to be discovered from the facts and circumstances attending it, these are given as instances merely in which the facts and circumstances stated evidence the deliberate mind and formed design to commit the act or to do the party some bodily harm which results in his death. And from this it clearly appears as a further definition of the particular and peculiar meaning attached to the term malice aforethought in describing the crime of murder, that the malicious intention must be to do the party some bodily harm, for an intention to do him any other harm or injury however great or malicious, felonious or deliberate it may be, cannot involve in contemplation of law the malice aforethought which constitutes the grand criterion and chief characteristic of murder. For not, even the crime of arson, or the malicious burning of another's dwelling house, although a capital offense also, however deliberately and maliciously it may be done, involves the idea of such malice aforethought in contemplation of law. And it is because the security of human life is of the highest consideration in law. Malice aforethought is implied by the common law from any deliberate, cruel act committed by one person against another, however sudden, as where one person kills another suddenly without any, or without a considerable provocation, the law implies malice. And it is a general rule of the common law that all homicide is presumed to be malicious, and to be murder, until the contrary appears from circumstances of alleviation, excuse or justification; and that it is incumbent upon the prisoner when the killing is proved, to make out such circumstances *Page 242 
to the satifasction of the Court and jury, unless they arise out of the evidence produced against him.
From these definitions of express and implied malice aforethought at common law it will appear to the jury that while a sedate deliberate mind and formed design on the part of the accused to kill the party slain, or to do him some bodily harm, is essential to constitute express malice aforethought, and murder of the first degree under our statute, the other description of malice aforethought essential to constitute murder of the second degree under it, is implied by law from any deliberate cruel act committed by one person against another, however sudden; as where one person kills another without any, or without a considerable provocation, the law implies the malice aforethought which constitutes it murder of the second degree under the statute. When therefore the act is committed with the deliberate mind and formed design contemplated in the first definition, and death is produced by it, it is evidence of express malice aforethought, and is murder, as we have before said, of the first degree in this State; but if death is produced by any deliberate cruel act committed by one person against another, however suddenly done, without any, or without a considerable provocation, the law implies malice aforethought in such a case, and it is murder of the second degree in this State. Because here, as we have before remarked, the distinction between the first and the second degree of murder under our statute, depends entirely on the distinction between express malice and implied malice aforethought at common law in respect to murder, except when it is committed in perpetrating or attempting to perpetrate a crime punishable with death. And this view is sustained by the authority cited by the Deputy Attorney General, in this case, 1 Whart. Cr. Law, Sec. 1084, although by the statute of Pennsylvania, and the judicial interpretation given to it by the Courts of that State, the specific intention to kill is made the criterion of murder of the first degree under their statute. *Page 243 
But in order to reduce the killing from the crime of murder committed with express malice aforethought and of the first degree under our statute, or with that coolness and deliberation of mind and formed design which is discovered and evidenced by the circumstances attending it, to murder committed with implied malice aforethought and of the second degree under the statute, it must not only appear that the deliberate, cruel act against the person killed was committed suddenly, and without the coolness, deliberation and formed design before mentioned, but that it was also committed without any, or without a considerable provocation. Because if the act of killing appears to have been committed with such a considerable provocation as is recognized in law to rebut and negative even the implication of malice aforethought, it cannot constitute murder of the second degree under the statute, but it will be reduced to the crime of manslaughter under the statute. For under the facts and circumstances proved in this case, and as the killing of the deceased by the prisoner at the bar is not in dispute now before the Court and jury, it is sufficient here to say without any further reference to, or general explanation of, the law in relation to homicide, that the term provocation just mentioned can have no other application in this case than such as the counsel for the prisoner has contended should have the effect to reduce it to a killing in self-defense, or to the crime of manslaughter, at least, in contemplation of law. But the provocation referred to in the definition of implied malice aforethought has particular reference to such acts of provocation as are sufficient to reduce an unlawful killing of one person by another from the crime of murder of either degree under the statute, to the crime of manslaughter, the next highest offense in case of homicide.
And as in this species of homicide, malice aforethought which is the main ingredient and characteristic of murder is considered to be wanting, manslaughter is therefore defined to be the unlawful killing of another without malice aforethought, either express or implied; and as *Page 244 
the offense is supposed to have been committed without malice, so also it must have been without premeditation. But this cannot occur in any case of unlawful killing unless it appears from the evidence that it was committed under a considerable provocation, and such as is recognized in law as sufficient under the circumstances proved to rebut the implication of malice; and such provocations vary in their character, but are well defined in the law. So far however as this case is concerned it will not be necessary to refer particularly to more than one class of them, and which is of more frequent occurrence, perhaps, than any other in cases of manslaughter. And that is when the provocation consists of actual violence or an assault committed by the deceased on the person of the accused, and in a sudden transport of passion, or heat of blood produced by it, and before he has had time to cool, he kills the aggressor, either with means not likely to produce death, or with a deadly weapon at hand and suddenly seized or used without preparation or premeditation, it is imputed by the benignity of the law solely to human infirmity, which though criminal in the eyes of the law, is considered as incident to the frailty of the human constitution, and therefore to have been committed without malice, and to be manslaughter only. But no words however abusive, insulting or offensive, without an assault or actual violence committed or menaced to him, upon the person of the accused, or on some one standing in the relation of a wife, son, daughter or servant, can constitute such a provocation in contemplation of law. And as the indulgence which is shown by the law in such cases to the first transport of passion is a condescension to the frailty of the human frame, to the furorbrevis, which while the frenzy lasts renders a man deaf to the voice of reason, so such a provocation must be felt and resented by him at the instant and before he has had time to cool, or for reflection; and all the circumstances of the case must lead to the conclusion that the act done, though intentional of death or great bodily harm to the deceased, *Page 245 
was not the result of a cool, deliberate judgment and previous malignity of heart, but was solely imputable to human infirmity. For there are many trivial, and some considerable provocations, which are not permitted, or deemed sufficient in law to extenuate an act of homicide, or rebut the conclusion of malice, and so reduce it to the crime of manslaughter. It is also a rule of law on this subject that in all cases of slight provocation, if it may be reasonably inferred from the weapon made use of, or from any other circumstance proved in the case, that the party intended to kill or do some great bodily harm, the law will imply malice, and such homicide will be murder of the second degree, at least, under our statute; and will be murder of the first degree, if the act is done with express malice, for the plea of provocation will avail in no case where there is evidence of express malice aforethought. And though an assault made with violence or circumstances of indignity upon a man's person, and resented immediately by the party acting in the heat of blood upon that provocation, and killing the aggressor, will reduce the crime to manslaughter, yet it must by no means be understood that the crime will be so extenuated by any trivial provocation which in law may amount to an assault, nor in all cases even by a blow, for violent acts of resentment bearing no proportion to the provocation or insult, are barbarous and proceed rather from brutal malignity than human frailty, and barbarity will often be evidence of malice. It is furthermore a rule of law that if a deadly weapon, or other instrument likely to produce death, be made use of, and death ensues, malice will be presumed, unless it appears that it was suddenly used without premeditation, in the heat of blood and the transport of passion produced by the provocation; and that in every case of homicide upon provocation, how great so ever that provocation may have been, if there is sufficient time for passion to subside and reason to interpose, such homicide will be murder of the second degree, at least, under the statute. *Page 246 
With respect to the interval of time which shall be allowed for passion to subside, the law prescribes no exact limits for it. In cases of this kind the immediate object of enquiry is, whether the suspension of reason arising from sudden passion continued from the time of the provocation received to the very instant the mortal wound was inflicted; for if it appears from any circumstance whatever in the evidence that the prisoner reflected, deliberated, or cooled any time before the fatal shot was fired, or there was time or opportunity for cooling, the killing will amount to murder of the second degree under the statute, as being attributable to malice and revenge, rather than human frailty. As we have before remarked, it is not every provocation, even by a blow, when the party receiving it uses a deadly weapon, that will reduce the killing to manslaughter, but it depends, as we have before said, upon the time elapsing between the blow received and the mortal wound inflicted, and also upon the fact whether it was inflicted with such a weapon at the moment in the possession of the party, as was likely to produce death, or he went for it and got it and brought it from another place, and when the latter fact occurs in a case it constitutes a material circumstance in the consideration of the question whether it was inflicted in the sudden heat of blood occasioned by the provocation, or a sufficient interval had elapsed for his passion to cool and for reason to regain dominion over his mind.
The proof in the case was substantially as follows: The prisoner and the deceased were brothers, the latter being the oldest and the largest and stoutest of the two, and were employed as hands on a farm near this place, and on the day of the homicide the prisoner was sent by his employer into town for a brief purpose and was soon expected back, and on his leaving the deceased requested him to get him some tobacco, and gave him the money to pay for it; but on reaching the town he found a fire had broken out in it, and he hastened to it, and was active and efficient with many others in extinguishing it, for *Page 247 
which they were treated to whiskey, and after which the prisoner lingered in the town long enough to drink too much elsewhere, and to spend the money the deceased had given him without getting any tobacco for him. On his return after an absence of several hours, however, he was asked by the deceased if he had got it for him, to which he answered that he had not, and on his then asking him for the money, he smiled and told him he had spent it; on which the deceased angrily said to him, "do you take my money in that way, and then laugh in my face!" and with that struck him two blows with his fists, one on the side of his neck and the other on his cheek, on which the prisoner also flew into a passion, and swore with an oath, but without returning either blow, that he would get the gun for him, and instantly turned towards the mansion on the farm which was near at hand, for that purpose, and as he did so the deceased also kicked him once, and as he started quickly towards the house defied him to do it, and told him that if he came out there again he would skin him, the prisoner at the same time proceeding with quick steps to the kitchen of the house which he entered and through which he passed and up a stairway to a room on the floor above it where the gun then was, and retracing his steps reappeared at the kitchen door with it in his hand, and without stopping to do so, raised it and cocked it and looked at the cap of it, as he walked quickly from the house towards the deceased, who in the mean while had picked up a large weeding hoe and was then weeding the ground with it near where the collision had commenced between them, and who immediately started towards the prisoner with it raised in his hands, but had proceeded only a few steps toward him, when the prisoner aimed and fired the gun at him, and he fell mortally wounded by the discharge of it, and died in a few hours afterwards.
There was no proof in the case of any antecedent grudge or malice on the part of either of them against the other, and no expression of manifestation of such a *Page 248 
feeling on the part of the prisoner towards the deceased alter the fatal shot was fired. And as there was no proof as to the distance from the place where the provocation was received to the room above the kitchen where the gun then was, and none as to the time which elapsed between the giving of the provocation and the shooting which soon afterwards followed it, it would be for the jury to consider and determine from the evidence before them whether a sufficient time had elapsed for the passion and anger of the prisoner to cool and subside and for reason 01 reflection to regain control of it and of his actions in the mean while. If you should find that there was, then the law will imply that he killed the deceased with malice aforethought, and in that case your verdict should be that he was not guilty in manner and form as he stands indicted, but guilty of murder of the second degree; but on the contrary, should you find that there was not a sufficient time for that to have taken place, then your verdict should be not guilty in manner and form as he stands indicted, but guilty of manslaughter.
As to the plea of self-defense the law on that subject is well settled, and under the facts proved it cannot avail in such a case as this. The contention on the part of the prisoner's counsel is that inasmuch as the deceased advanced with a large weeding hoe raised in his hands to encounter the prisoner with the gun in his hands pointed at him, it became a case of mutual combat between them with equally dangerous and deadly weapons, and as the prisoner was then in imminent danger of being killed or grievously wounded by the deceased, to save himself from that immediate danger, he was justified or excusable in law in shooting and killing the deceased, particularly as it was in a conflict which he had provoked and courted from the beginning of the altercation between them. But to constitute and establish such a defense in any case the law requires that the party killing was not only in imminent and manifest danger of losing his life, or of suffering enormous bodily harm and was closely pressed *Page 249 
by his assailant, but that he sought to avoid it, and retreated from it as far as he conveniently and safely could, and that the killing of the assailant was necessary after having done this to protect his own life, or save himself from such bodily harm. Had such been the conduct of the prisoner in this case, he would have been entitled to a verdict of acquittal at the hands of the jury, but the evidence does not present such a case, and it is therefore insufficient to warrant such a verdict.
As to the State and condition of the prisoner at the time the act was committed, so far as drunkenness or intoxication was concerned, the jury must consider and determine as to that from all the facts and circumstances in evidence before them in the case, the rule of law on that subject being that drunkenness or intoxication is no excuse for crime, unless it is so great as to render the party unconscious of what he is doing at the time.
The verdict was "guilty of murder of the second degree."